## In re SWEET TRANSFER & STORAGE, INC., Debtor.

**Michael R. MIYAO; Steven D. Betten; Anton J. Miller, Appellants,**

v.

**David J. KUNTZ; Sweet Transfer & Storage, Inc., Appellees.**

**No. 88–4156.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 9, 1990.*

Decided Feb. 21, 1990.

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Anton J. Miller, Tacoma, Wash., for appellants.

Roger E. Rahlfs, Robben & Blauert, Seattle, Wash., for appellees.

Before BROWNING, POOLE and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Michael R. Miyao, Steven D. Betten and Anton J. Miller appeal the Bankruptcy Appellate Panel ("BAP")'s dismissal of their appeal for failing to timely file their notice of appeal. They argue that the BAP's decision should be reversed because there has not yet been a final judgment. Alternatively, they argue that their notice of appeal was timely under Bankruptcy Rule ("BR") 8002 and Fed.R.App.P. 4(a) or should be treated as if it were due to the "unique circumstances" of this case. They also argue that the papers they submitted within the ten-day period following the filing of Sweet Transfer & Storage, Inc. ("Sweet")'s notice of appeal should be held to constitute timely notice of appeal. Further, they contend that the court should use its nunc pro tunc power to modify the date of entry for the bankruptcy court's final judgment. We affirm.

## I

On September 9, 1986, attorney Miller filed an involuntary petition under Chapter 7, supposedly on behalf of Miyao, Betten and Kuntz. On September 16, 1986, Sweet filed an answer to the petition and raised a counterclaim based on allegations that the action was without merit and filed in bad faith.

After a hearing on October 26, 1986, the court entered its order dismissing the involuntary petition. The appellants' motion for reconsideration of that order was denied by the court on December 9, 1986. No notice of appeal was filed from the October 26, 1986 order of dismissal other than the two notices of appeal filed by the appellants in July 1987 (discussed infra).

The bankruptcy court set a trial date on Sweet's bad faith and damage claims against Miyao and Betten brought under Bankruptcy Code § 303(i). On April 17, 1987, approximately one month before trial,

Sweet filed a motion for sanctions against Miller under BR 9011. That motion was noted for conclusion of trial.

Sweet's claims under § 303(i) were tried on May 18, 1987. The bankruptcy court gave its decision orally on June 17, 1987. The court found that the creditors Betten and Miayo had not acted in bad faith and refused to assess damages, costs or fees against them. However, the court did find that Miller had violated BR 9011 and imposed a monetary judgment against him in favor of Sweet.

On July 24, 1987, the parties' motions for reconsideration were orally denied. The appellants filed their first notice of appeal on that same day. The order denying reconsideration and the judgment were signed and filed on July 28, 1987. Appellants filed an amended notice of appeal on July 29, 1987. However, the orders denying the motions for reconsideration and the judgment were not entered until August 6, 1987. Sweet filed its notice of appeal on August 12, 1987.

On June 22, 1988, an order of dismissal was filed sua sponte by the BAP based on appellants' untimely filing of its notice of appeal with respect to the October 24, 1986 order of dismissal and their failure to file a timely notice of appeal after the August 6, 1987 entry of the order and judgment with respect to sanctions imposed against Miller. The BAP's order denying appellants' motion for rehearing was entered August 25, 1988. Appellants filed their notice of appeal to this court on August 29, 1988.

## II

Appellants first argue that there has never been a final judgment in this case because there is still an undecided counterclaim by Sweet against Kuntz. Therefore, they contend, the time for appeal has not yet started to run. However, the pretrial order agreed to by appellants and lodged with the court prior to trial of the § 303(i) issue clearly establishes that Sweet was not pursuing a claim against Kuntz.

■ Further, regardless of any pending § 303(i) claim against Kuntz, there was an appealable final order entered on October 24, 1986 with regard to the involuntary petition brought by the appellants. Under BR 1011(d) "[a] claim against a petitioning creditor may not be asserted in the answer except for the purpose of defeating the petition." *See also* Advisory Committee Note. However, under 11 U.S.C. § 303(i), the court upon dismissing a petition may grant judgment against any petitioner that filed a petition in bad faith for both compensatory and punitive damages, so long as the debtor has not waived its rights under this section. By its terms, an action under § 303(i) does not arise until the petition has been dismissed by the court. At that point the merits of the petition have been finally determined. In this respect, the § 303(i) action is analogous to an action for malicious prosecution or for attorneys' fees.

Although a debtor may include a "counterclaim" for damages as described under § 303(i), it is only permissible under BR 1011(d) to the extent that bad faith is considered in defeating the petition. Any actual claim brought for damages is premature prior to dismissal of the petition. *In re Onyx Telecommunications, Ltd.*, 60 B.R. 492, 494 (Bankr.S.D.N.Y.1985). Consequently, the fact that a creditor includes a "counterclaim" for § 303(i) damages in his answer does not prevent the dismissal of the petition from being an appealable final order in spite of the fact that the court has not yet determined the petitioners' liability under § 303(i). *In re Tarasi & Tighe*, 88 B.R. 706, 707 (Bankr.W.D.Pa. 1988); *see also* Weintraub & Resnick, *Bankruptcy Law Manual*, § 2.10[2] p. 2–29, § 2.17 pp. 2–39 to 2–41. Because appellants did not file a notice of appeal until nearly eight months after the bankruptcy court had denied their motions for reconsideration of the October 24, 1986 order, their appeal was not timely.

## III

■ Appellants' notice of appeal was also untimely with regard to the sanctions imposed against Miller. Rule 8002(a) requires that a notice of appeal be filed "within 10 days of the date *of the entry* of

the judgment, order, or decree appealed from." (Emphasis added). Further, subsection (b) adds that where a timely motion is filed, such as the appellants' motion for reconsideration, "the time for appeal for all parties shall run from the *entry* of the order [disposing of that motion]. *A notice of appeal filed before the disposition of any of the above motions shall have no effect; a new notice of appeal must be filed.*" (Emphasis added). The language of the rule clearly requires a notice of appeal to be filed within the 10 days after the entry of the order denying reconsideration and the judgment. Notice filed before entry or more than 10 days after is ineffective.

Federal courts have held that BR 8002(b) should be applied in the same manner as Fed.R.App.P. 4(a)(4). *See In re Crystal Sands Properties,* 84 B.R. 665, 667 (Bankr. 9th Cir.1988) ("Rule 8002(b) is adopted from Rule 4(a)(4), Fed.R.App.P. . . . and is 'essentially the same as that rule.'") (quoting the Advisory Committee Note to Rule 8002(b) (1983)). Accordingly, in construing BR 8002(b) courts look to the Supreme Court's interpretation of Rule 4(a)(4). In *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam), the Supreme Court held that under Rule 4(a)(4) a notice of appeal filed prior to the disposition of a motion under Fed.R.Civ.P. 59 is a "nullity. . . . In short it is as if no notice of appeal were filed at all." 459 U.S. at 61, 103 S.Ct. at 403.

*Griggs* apparently left open the dispositive issue in this case—at what point is a motion disposed of for the purpose of filing an effective notice of appeal. For example, two years after *Griggs,* we held that a notice of appeal filed after a motion to amend had been denied orally from the bench, but prior to the date on which the order was signed and filed, was timely. *In re Brickyard,* 735 F.2d 1154 (9th Cir.1984). We held that BR 802 (predecessor to BR 8002(b)) should be construed the same as Fed.R.App.P. 4(a)(4). Ninth Circuit precedent held that such a notice of appeal was timely under Rule 4(a)(4). We distinguished *Griggs* on the basis that the mo-

tion had not yet been orally denied from the bench in that case.

However, in 1986 the Supreme Court rejected this construction of Fed.R.App.P. 4(a):

> The Ninth Circuit's *Calhoun* [the case relied on in *Brickyard* ] essentially reads the first clause of subdivision (a)(2) out of Rule 4 . . . But if subdivision (a)(2) is taken seriously it is untenable to read subdivision (a)(4) except as the Fifth Circuit has read it in this case: that is, as establishing the rule that a notice of appeal is ineffective unless filed after entry of judgment on a Rule 59 motion or any other motions to which the subdivision applies.

*Acosta v. Louisiana Dept. of H & H Res.,* 478 U.S. 251, 254, 106 S.Ct. 2876, 2878, 92 L.Ed.2d 192 (1986). Thus, the Court held that the *entry* of judgment was the operative event under Rule 4(a)(4) after which notice must be filed to be considered timely.

Because courts construe BR 8002(b) in the same manner as they do Fed.R.App.P. 4(a)(4), *Acosta* also controls the issue of timeliness in bankruptcy appeals. Certainly, given the stricter language of the bankruptcy rule (there is no equivalent to Fed. R.App.P. 4(a)(2) in BR 8002) it should not be construed more liberally. Therefore, appellants' notices of appeal before the entry of the order imposing sanctions against Miller are ineffective. Because no notice of appeal was filed within ten days after the entry of the final order, we lack jurisdiction to consider this appeal.

## IV

██ Appellants also argue that it would be unfair to hold that their July 29, 1987 notice of appeal was untimely because

1) they relied on Fed.R.Civ.P. 54(b);

2) they relied on BR 9022 (requiring clerk to send notice of entry of a judgment or order to the contesting parties);

3) they relied on the judge's assurance that they would be advised of the entry of the order;

4) the bankruptcy court's docket was not readily accessible;

5) they relied on *In re Hudson.*

Appellants contend that these factors created "unique circumstances" sufficient to excuse them from strict compliance with the filing requirements. Their reliance on these factors is unavailing. The finality of the order dismissing the involuntary petition is discussed in section II. Confusion regarding the rules (i.e., the application of Rule 54(b) to bankruptcy cases) is not excusable neglect. *In re Colombian Coffee Co.,* 71 B.R. 258 (Bankr.S.D.Fla.1987).

■ Additionally, BR 9022 states expressly that "lack of notice of the entry does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed...." Courts have strictly enforced this rule, holding that parties must monitor the dockets to inform themselves of the entry of orders they may wish to appeal. *See In re Mullis,* 79 B.R. 26, 28 (D.Nev. 1987) (court held lack of notice was immaterial even where party was not represented by counsel).

The record does not include a transcript of the judge's alleged assurance to the appellants. However, any such assurance would likely be merely a reiteration of BR 9022. Consequently, it is immaterial to their failure to file a timely notice of appeal. Further, it does not appear that the appellants actually relied on any such assurance as they filed two notices of appeal prior to the entry of the order. In fact, they filed the first on the same day that the judge orally denied the motions for reconsideration—the same day the judge allegedly assured them they would be notified of the entry of the order.

Appellants also allege that the bankruptcy court docket was not readily accessible to them between August 6, 1987 and August 22, 1987. However, appellants fail to give any explanation as to how the docket was inaccessible to them. The fact that it was inconvenient for them to monitor the court's docket is not an excuse. *See In re Mullis,* 79 B.R. at 26. Further, Sweet was apparently able to learn of the entry of the

order as it filed its notice of appeal six days later.

Finally, the appellants' reliance on *In re Hudson,* 73 B.R. 649 (Bankr. 9th Cir.1987), *rev'd on other grounds,* 859 F.2d 1418 (9th Cir.1988), is not persuasive. The decision in that case was clearly contradicted by the Supreme Court's decision in *Acosta.*

V

Additionally, appellants argue that their submission within the ten days following Sweet's notice of appeal should be held to constitute a timely notice of appeal. BR 8002(a) provides that "[i]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed...." Further, we have "recognized that documents not formally denominated notices of appeal have nevertheless been treated as such as long as they clearly evince the party's intent to appeal and provide notice to both the opposing party and the court." *San Diego Committee v. Governing Bd.,* 790 F.2d 1471, 1474 (9th Cir.1986).

■ Specifically, appellants argue that their request for transcripts and their letter to the bankruptcy court should be held to constitute a notice of appeal. This argument is without merit. It is arguable whether these documents "clearly evince the part[ies'] intent to appeal." Additionally, neither of the documents provided notice to Sweet. In prior cases, we have required the document in question to have been *served* upon the other parties. *Rabin v. Cohen,* 570 F.2d 864, 866 (9th Cir.1978).

Further, in *Munden v. Ultra–Alaska Assoc.,* we held that this more lenient standard for notices of appeal should only be employed in cases where the appellant is "not represented by counsel, [where] life or liberty is at stake, or when the interests of substantive justice require it to disregard irregularities in the form or procedure for filing notice of appeal." 849 F.2d 383, 387–88 (9th Cir.1988) (citations omitted). In fact, we stated that we "will not extend any leniency that is not required by [prior

Ninth Circuit] cases to one where the party is represented by an attorney." *Id.* at 388.

Appellants submissions do not clearly evince their intent to appeal or provide notice to Sweet. Therefore, they do not constitute a notice of appeal. *Munden* further supports denying such status to the documents in question.

## VI

For the reasons discussed above, we decline to direct that the orders filed on July 28, 1987 be entered nunc pro tunc as of July 28, 1987.

## VII

Sweet's request for sanctions is denied. AFFIRMED.